UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SUSAN KAMMERZELL, )
)
    Plaintiff, )
)
  vs. ) Case No.   4:11CV1509  HEA
)
ST LUKE'S EPISCOPAL- )
PRESBYTERIAN HOSPITALS, )
    Defendant. )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss, [Doc. No. 20]. Plaintiff opposes the motion, and on February 16, 2012, the Court held a hearing on the Motion. For the reasons set forth below, the Motion is denied.

### Facts and Background[1]

Plaintiff's First Amended Complaint alleges the following:

Plaintiff is a registered nurse licensed by the State of Missouri. Plaintiff was employed by Defendant and on February 16, 2011, Plaintiff was allegedly wrongfully terminated from her job by Defendant on the purported grounds that she violated the Hospital's Drug-Free Workplace policy. Plaintiff alleges that she did not violate the Hospital's Drug-Free Policy.

---

[1] The recitation of facts is set forth for the purposes of this motion only, and in no way relieves the parties of proof thereof in later proceedings.

Prior to her termination, Plaintiff had worked at the Hospital for more than twenty-seven consecutive years as a registered nurse.

On May 16, 2010, Plaintiff's supervisors at the Hospital suspected Plaintiff was intoxicated. Shortly after Plaintiff arrived at work on May 16, 2010, she was pulled off the floor and forced to provide a urine sample and take breathalyzer tests to detect the presence of alcohol. The urine sample showed that Plaintiff had not consumed any illegal drugs. Plaintiff alleges that the breathalyzer falsely showed that Plaintiff had been drinking.

Plaintiff contends that in administering the breathalyzer tests, the Hospital failed to follow the proper protocols and procedures to ensure the results were accurate.

On May 16, 2010, Defendant suspended Plaintiff from her job.

On or about May 17, 2010, Plaintiff voluntarily provided a urine sample to a private laboratory for testing. The private test results showed that Plaintiff had not consumed any alcohol during the eighty (80) hours prior to the time she submitted the sample for testing. Plaintiff made the Hospital aware of her private test results, but the Hospital chose to ignore or disregard them.

According to the First Amended Complaint, contrary to its own Drug-Free Policy, the Hospital refused to order any confirmatory tests after the breathalyzers

purported to show Plaintiff had been drinking.

On or about June 9, 2010, before it would allow Plaintiff to return to work, Defendant forced Plaintiff to sign an agreement (the "Return to Work Agreement") giving Defendant the right to randomly test Plaintiff for drugs and/or alcohol.  Plaintiff signed the Return to Work Agreement under protest.  Pursuant to the Return to Work Agreement, Plaintiff provided the Hospital with urine and breathalyzer samples for testing on July 23, 2010, August 19, 2010, September 10, 2010, October 25, 2010, and November 12, 2010.  These samples showed Plaintiff had not consumed any alcohol or illegal drugs.  Pursuant to the Return to Work Agreement, Plaintiff also was forced to attend numerous meetings with a counselor from the Hospital's employee assistance program.

On January 21, 2011, Plaintiff's supervisors again allegedly erroneously suspected that Plaintiff was intoxicated.  Shortly after Plaintiff arrived at work on January 21, 2011, she was pulled off the floor and forced to provide a urine sample, and to take breathalyzer tests to detect the presence of alcohol.  The urine sample showed that Plaintiff had not consumed any illegal drugs.  The breathalyzer falsely showed that Plaintiff had been drinking.  Plaintiff believes that the urine sample was not immediately tested for the presence of alcohol.

In administering the breathalyzer tests, the Hospital failed to follow the

proper protocols and procedures to ensure the results were accurate.

On January 21, 2011, Defendant suspended Plaintiff from her job.

On January 21, 2011, within two hours of the breathalyzer tests, Plaintiff voluntarily provided a blood sample to a private laboratory for testing. These test results showed that Plaintiff had not consumed any alcohol or drugs.

On January 22, 2011, Plaintiff voluntarily provided a urine sample to a private laboratory for testing. These test results showed that Plaintiff had not consumed any alcohol during the eighty (80) hours prior to the time she submitted the sample for testing. Plaintiff made the Hospital aware of her private test results, but the Hospital chose to ignore or disregard them.

Allegedly contrary to its own Drug-Free Policy, the Hospital refused to order any confirmatory tests after the breathalyzers purported to show Plaintiff had been drinking.

On February 16, 2011, the Hospital terminated Plaintiff's employment on the purported grounds that Plaintiff had violated its Drug-Free Policy.

On or about February 28, 2011, after it had already terminated Plaintiff's employment, the Hospital finally ordered a confirmatory test on the urine sample taken from Plaintiff on January 21, 2011. The confirmatory test performed by the Hospital purported to indicate the presence of alcohol. The confirmatory test

performed by the Hospital is allegedly flawed and inaccurate.

After terminating Plaintiff's employment, Defendant filed a complaint against Plaintiff with the Missouri Board of Nursing (the "Board of Nursing"), the state body that regulates nurses in Missouri. In its complaint to the Board of Nursing, Defendant alleged that Plaintiff had violated the Hospital's Drug-Free Policy.

On or about April 26, 2011, Plaintiff filed a claim against Defendant with the local office of the Equal Employment Opportunity Commission (the "EEOC"). On July 29, 2011, at Plaintiff's request, the EEOC issued a right to sue letter.

Count I of Plaintiff's First Amended Complaint alleges a violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.,* (ADA); Count II alleges a claim for retaliation in violation of the ADA; Count III is a claim for discrimination under the Missouri Human Rights Act, R.S. Mo. § 213.101, *et seq.*, MHRA; Count IV asserts a claim for retaliation in violation of the MHRA; Count V states a claim for Injurious Falsehood.

Defendant moves to dismiss Counts III and IV, presumably under Rule 12(b)(1), on the ground that the Court lacks subject matter jurisdiction.

## Discussion

Rule 12(b)(1) of the Federal Rules of Civil Procedure expressly provides for

a pre-answer motion to dismiss for "lack of jurisdiction over the subject matter," but, because subject matter jurisdiction goes to the court's power to hear the case, "'[a]ny party or the court may, at any time, raise the issue of subject matter jurisdiction.'"  *Myers v. Richland County*, 429 F.3d 740, 745 (8th Cir.2005) (quoting *GMAC Commercial Credit, L.L. C. v. Dillard Dept. Stores, Inc.*, 357 F.3d 827, 828 (8th Cir.2004)).  When the challenge to subject matter jurisdiction comes in the form of a Rule 12(b)(1) pre-answer motion, the question may be resolved either on the face of the pleadings or upon factual determinations made in consideration of matters outside of the pleadings.  See *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir.1993); *Osborn v. United States*, 918 F.2d 724, 729 & n. 6 (8th Cir.1990).  In a facial challenge, the court must accept all factual allegations in the complaint as true, draw all inferences in the plaintiff's favor, and grant the motion to dismiss only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. See *Young America Corp. v. Affiliated Computer Services*, Inc., 424 F.3d 840, 843-44 (8th Cir.2005) (citing *Titus*, 4 F.3d at 593).  On the other hand, when the parties rely on materials outside of the pleadings in asserting or opposing the motion, thereby turning the challenge into a factual one, the court is entitled to resolve factual issues to determine its jurisdiction.  *McClain v. American Economy Ins. Co.*, 424 F.3d 728, 734 (8th Cir.2005) (citing *Osborn*, 918

F.2d at 728 & n. 4).  As the Eighth Circuit Court of Appeals has explained, dismissal for lack of subject matter jurisdiction is appropriate only in those rare instances when the challenged claim "'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'"  *Trimble v. Asarco, Inc.*, 232 F.3d 946, 953 (8th Cir.2000) (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)).

If a motion makes a facial attack, the court must afford the non-moving party the same protections as it would be entitled to receive under Rule 12(b)(6). *Osborn*, 918 F.2d at 729.  On the other hand, if the motion makes a factual attack, the court may rely upon matters outside the pleadings when considering such attack, and the nonmoving party does not receive the benefits of Rule 12(b)(6)'s safeguards. *Id.*

Defendant argues that the issue before the Court is a challenge to the Court's subject matter jurisdiction, contending that the it is exempt from suit under the MHRA.  Defendant has submitted an affidavit in support of this argument.

Under the Missouri Human Rights Act, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, national origin, sex, ancestry,

age or disability." R.S.Mo. § 213.055.1(1)(a). The MHRA excludes "corporations and associations owned and operated by religious or sectarian groups" from its definition of employer. Mo.Rev.Stat. § 213.010(7).

This Court's subject matter jurisdiction arises from two sources: federal question jurisdiction, 28 U.S.C. § 1331 and diversity of citizenship jurisdiction, 28 U.S..C. § 1332.  Plaintiff has invoked the provisions of Section 1331 as her basis for the Court's jurisdiction.  Along with federal question jurisdiction comes supplemental jurisdiction.  The Court's supplemental jurisdiction over state law claims arises under 28 U.S.C. § 1367(a) which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within the [court's] original jurisdiction."  28 U.S.C. § 1367(a).

The parties do not dispute that the MHRA claims are "so related" to the ADA claims, rather, Defendant argues that because of the exclusion in the MHRA of religious and secular entities, this Court does not have jurisdiction over the particular claims against Defendant.  Defendant's argument, however, goes not to the Court's power and authority to adjudicate the claims, which the Court clearly has, but to whether the Missouri statute is applicable to Defendant.  That is, whether it is "owned and operated" by a religious or sectarian group[]."  Such a

determination is a question of law, not jurisdiction. As such, Defendant's Motion to Dismiss for lack of subject matter jurisdiction is denied.

Moreover, at this stage of the proceedings, it is premature to convert the motion to dismiss to a motion for summary judgment, as Plaintiff has not been given the opportunity to conduct discovery with regard to whether Defendant is an exempt entity.

## Conclusion

Based upon the foregoing analysis, Defendant's Motion to Dismiss for lack of subject matter jurisdiction is without merit. The Court clearly has subject matter jurisdiction under the provisions of 28 U.S.C. § 1331 and 28 U.S.C. 1367.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, [Doc. No. 20], is Denied.

Dated this 27th day of February, 2012.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE